TRENT J. THORNLEY (SBN 184402)
LAW OFFICE OF TRENT J. THORNLEY
345 Franklin Street, Ste. 103
San Francisco, CA 94102
Telephone: (415) 437-9100
Facsimile: (415) 358-5929
Email: trent_thornley@sbcglobal.net

MATT SPRINGMAN (SBN 252508)
300 Berry Street #520
San Francisco, CA 94158
Telephone (703) 217-7018
Email: springman.matt@gmail.com

Attorneys for Plaintiff
DENIZ BOLBOL

G. WHITNEY LEIGH (SBN 153457)
GONZALEZ & LEIGH LLP
744 Montgomery Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 912-5950
Facsimile: (415) 912-5951

Attorneys for Plaintiff
ALEX FELSINGER

JOSEPH P. CUVIELLO
P.O. Box 2834
Redwood City, CA  94064
Telephone:  650-654-9955
Email:  pcuvie@gmail.com

Plaintiff In Pro Se

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO, DENIZ BOLBOL, AND ALEX FELSINGER, individually,<br><br>                     Plaintiffs,<br>          v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION AND PARK DEPARTMENT, SAN FRANCISCO POLICE OFFICER N. YU, SAN FRANCISCO PARK RANGER J. MITRA and DOES 1-20, in their individual and official capacities, Jointly and Severally,<br><br>                     Defendants. | Case No. 12-cv-03034 EMC<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>1.  Violation of 42 U.S.C 1983<br>2.  Conspiracy under 42 U.S.C. 1985<br>3.  Violation of CA Const., Art. 1, 2(a)<br>4.  Facial Challenge to SF Park Code §7.08(d)<br>5.  Facial Challenge to SF Park Code §7.15<br>6.  Violation of CA Civ. Code §52.1<br>7.  Taxpayer relief under CA Civ. Code §526a |

Plaintiffs, for their Complaint against Defendants, state as follows:

## JURISDICTION AND VENUE

1.      This is a civil rights action arising from Defendants' unreasonable arrest of PLAINTIFFS JOSEPH CUVIELLO and ALEX FELSINGER on September 2, 2011, and violation of PLAINTIFFS JOSEPH CUVIELLO, DENIZ BOLBOL and ALEX FELSINGER'S  right to freedom of speech, assembly, association, and conscience in Union Square, a traditional public forum in downtown San Francisco. This action is brought pursuant to 42 USC §§ 1983, 1985 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution.  This Court has subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 USC §1367 to hear and decide claims arising under state law.

2.      Venue is proper in the Northern District of California Pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## INTRADISTRICT ASSIGNMENT

3.      All of the events and/or omissions complained of herein occurred in the City and County of San Francisco, California and this action is properly assigned to the San Francisco Division of the United States District Court for the Northern District of California.

## GOVERNMENT TORT CLAIMS ACT COMPLIANCE

4.      Plaintiffs have complied with the California Government Tort Claims Act Section 910, et seq.

## INTRODUCTION

5.      This complaint seeks relief against Defendants based on their September 2, 2011, arrests of PLAINTIFFS JOSEPH CUVIELLO and ALEX FELSINGER, while Plaintiffs were engaged in constitutionally protected free speech activity, and based on their September 2, 2011, violation of PLAINTIFFS JOSEPH CUVIELLO, DENIZ BOLBOL and ALEX FELSINGER'S constitutionally protected free speech rights at Union Square, in San Francisco, California.

6.      This complaint also challenges the constitutionality of section San Francisco

Park Code section 7.15 and 7.08(d), a rarely-used and selectively-enforced regulation that prohibits free expression activities in vague and arbitrarily-defined areas in Union Square and other public areas in San Francisco.

7.      This complaint requests monetary damages, declaratory and injunctive relief against Defendants for committing acts under color of law, which deprived Plaintiffs of rights secured by the United States and California Constitutions and the laws of the United States and the State of California; for conspiring for the purpose of impeding and hindering the due course of justice with the intent to deny Plaintiffs equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

8.      Defendants, while acting in their capacities as law enforcement officers, deprived Plaintiffs of their rights, privileges and immunities as guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 1, Article I, Section 2(a), Article I, Section 7(a), and Article I, Section 13 of the California Constitution."

## PARTIES AND PROCEDURE

9.      PLAINTIFFS JOSEPH CUVIELLO and DENIZ BOLBOL are residents of the State of California.  PLAINTIFF ALEX FELSINGER is a resident of the State of Oregon.

10.      Defendant CITY and COUNTY of SAN FRANCISCO is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the San Francisco Police Department and San Francisco Parks Department which employ other individual defendants in this action.

11.      Defendants SAN FRANCISCO POLICE OFFICER N. YU and SAN FRANCISCO PARK RANGER J. MITRA, are individuals who were at all material times employed as law enforcement officers by Defendant CITY and COUNTY OF SAN FRANCISO, and were acting within the course and scope of their employment, and are sued in their individual and official capacities.

12.      DOES 1-20, on information and belief, were at all material times persons employed by and/or business entities doing business with the CITY and COUNTY OF SAN

1   FRANCISCO, California.  Plaintiffs are further informed and believe, and thereon allege that

2   at all material times these Defendants owned, operated, managed, directed, controlled, and/or

3   employed other defendants in this action.  The true names and capacities of these Defendants

4   are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and

5   Plaintiffs will seek leave to amend this complaint to show their true names and capacities

6   when the same are ascertained.

7        13.     Plaintiffs are informed and believe and thereon allege that each of the

8   Defendants sued herein was negligently, wrongfully, and otherwise responsible in some

9   manner for the events and happenings as hereinafter described, and proximately caused

10  injuries and damages to Plaintiffs.  Further, one or more Doe defendants were at all material

11  times responsible for the hiring, training, supervision, and discipline of other defendants,

12  and/or directly responsible for violation of Plaintiffs' rights.

13       14.     Each individual defendant is sued in his/her individual and official capacities.

14       15.     Plaintiffs are informed and believe, and thereon allege, that each of the

15  defendants were at all material times a managing agent, agent, servant, employee, partner, and

16  co-conspirator of the remaining defendants, and in doing the things herein alleged, was acting

17  within the course and scope of that relationship.  Plaintiffs are further informed and believe,

18  and thereon allege, that each of the defendants herein gave consent, aid, and assistance to each

19  of the remaining defendants, and ratified and/or authorized the acts or omissions of each

20  defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

21       16.     At all material times, each defendant was jointly engaged in tortious activity,

22  resulting in the deprivation of Plaintiffs' Constitutional rights and other harm.

23       17.     At all material times, each defendant acted under color of the laws, statutes,

24  ordinances, and regulations of the State of California and the CITY and COUNTY OF SAN

25  FRANCISCO.

26       18.     The Complaint may be pled in the alternative pursuant to FRCivP 8(d)(2).

27                          **FACTUAL ALLEGATIONS**

28       19.     Plaintiffs reallege each and every paragraph in this complaint as if fully set

3

forth here.

20.     PLAINTIFFS JOSEPH CUVIELLO and DENIZ BOLBOL are members of Humanity through Education, a San Francisco Bay Area grassroots group dedicated to the humane treatment of animals and educating the public about the abuse and mistreatment of animals in circuses.

21.     PLAINTIFF ALEX FELSINGER is an animal rights activist who frequented Humanity Through Education demonstrations prior to moving out of state.

22.     Plaintiffs' speech and association includes holding signs and banners, exhibiting video footage of various circuses' treatment of different animals, and offering leaflets with information about the condition and treatment of animals kept by circuses.

23.     Plaintiffs exercise their right to freedom of speech and association on matters of great public concern locally, nationally, and internationally - the abuse and mistreatment of animals, including but not limited to endangered species, tigers, and Asian elephants – by circuses and other "entertainment" entities.

24.     On September 2, 2011, the Ringling Bros. and Barnum & Bailey Circus had a promotional event in Union Square in downtown San Francisco. Union Square is a public plaza of 2.6 acres bordered by Geary, Powell, Post and Stockton Streets in San Francisco, California.

25.     On September 2, 2011, Plaintiffs, along with others in concert, went to Union Square to hold signs and banners and offer leaflets to the public regarding the Circus' mistreatment of the animals they use in their show.

26.     Union Square is public property, owned by DEFENDANT CITY and COUNTY OF SAN FRANCISCO.

27.     Union Square consists of sidewalks, grass areas, tables, an open square and resting places. It is used by the public to traverse, sit, rest and/or eat and relax.

28.     Union Square is a traditional public forum.

29.     On August 31, 2011, PLAINTIFFS CUVIELLO and BOLBOL became aware that Ringling Bros. Circus had organized a September 2, 2011, promotional event in Union

Square. PLAINTIFFS CUVIELLO and BOLBOL quickly organized a small group of people to attend the event for the purpose of educating the public, (through the use of signs, banners and leaflets), regarding Ringling Bros.' abuse of animals.

**Events Of September 2, 2011**

30.     On September 2, 2011, at approximately 11:30 a.m. PLAINTIFFS CUVIELLO and BOLBOL entered Union Square with their banners, signs and leaflets

31.     PLAINTIFFS CUVIELLO and BOLBOL were approached by DEFENDANTS YU and MITRA and told that Ringling Bros. Circus had a permit to use the Square and if Plaintiffs wished to demonstrate they would have to do so in the designated free speech box, an approximately 20 feet by 20 feet area cordoned off with bike racks, in the Southeastern corner of the square, which had been set-up prior to Plaintiffs' arrival in the square. YU and MITRA made no attempt to impose these restrictions on other members of the public present in the Square grounds who were standing and walking through the Square grounds without restriction or interference.

32.     The so-called "free speech" area that the officers  represented was designated under San Francisco's Park Code , was unconstitutional, in part, because it was a prophylactic restriction on free expression, and because the "free speech" area was situated behind Plaintiffs' intended audience and surrounded by barricades, and would therefore severely interfere with Plaintiffs' ability to effectively promote their message to the people attending and witnessing the Circus' promotional event. Additionally, the free speech area, designated by the officers, was not narrowly tailored to protect any legitimate interest and there was no independent lawful reason to restrict Plaintiffs from accessing Union Square, which is a quintessential public forum.

33.     DEFENDANT YU told Plaintiffs that if they demonstrated outside the free speech area designated by he and DEFENDANT MITRA, they would be cited for violation of San Francisco Park Code 7.15, which provides: "Any person possessing a valid permit, which states that an area has been reserved for such person's use, has the exclusive right to use the area or facility specified in the permit for the time specified. It shall be unlawful for any

person to refuse to leave an area or facility which has been reserved by a valid permit when asked to do so by the person or party displaying such permit, by a Recreation and Park Department employee, by a police officer, or by a member of the Park Patrol, and no person shall in any manner disturb or interfere with any person or party occupying the area under such a permit, nor with the belongings of such person or party."

34.     PLAINTIFFS CUVIELLO and BOLBOL told DEFENDANTS YU and MITRA that the Square was a public forum and asked DEFENDANT YU to call his watch commander to clarify the law. Plaintiffs then went up to the Northwestern area of the Square and unfurled their banner, that read "Ringling Bros. Beats Animals," so that it was viewable by the public watching the Circus' performance.

35.     DEFENDANTS YU and MITRA grabbed hold of Plaintiffs' banner and, despite Plaintiffs' protest to not touch their property, the officers grabbed Plaintiffs' banner and attempted to pull it down while Plaintiffs were attempting to hold it up. PLAINTIFFS CUVIELLO and BOLBOL, in their attempt to display their banner, struggled with YU and MITRA for several minutes. DEFENDANT MITRA told PLAINTIFF CUVIELLO that the property was "private" and that Plaintiffs were trespassing for demonstrating outside the free speech zone designated by the officers.

36.     DEFENDANT YU then informed Plaintiffs they would be handcuffed and given a citation for violation of the San Francisco Park Code. When PLAINTIFF CUVIELLO asked what section of the Park Code Plaintiffs would be cited for DEFENDANT YU responded that they would be arrested under section 7.08(b). PLAINTIFF CUVIELLO asked to see the code and YU handed Mr. CUVIELLO a copy of excerpts of the code, which had been highlighted.   YU told Mr. CUVIELLO to read the highlighted parts; 7.08(b) reads: "It shall be unlawful for any person to engage in petitioning, leafleting, demonstrating or soliciting in such a manner as to substantially obstruct any traffic of pedestrians or vehicles after being warned by a peace officer or a member of the Park Patrol not to do so."

37.     PLAINTIFF CUVIELLO asked DEFENDANT YU if he thought Plaintiffs were obstructing traffic and DEFENDANT YU told him yes.

38.     YU's assertion was incorrect.  Plaintiffs were not obstructing any pedestrian traffic or vehicles, and YU had no basis to threaten Plaintiffs with citation or arrest for violation of section 7.08(b).

39.     PLAINTIFF CUVIELLO then asked DEFENDANT YU if he would be arrested.  DEFENDANT YU responded that he would only cite Mr. CUVIELLO if Mr. CUVIELLO continued to protest outside the free speech area after being cited; but that if he continued demonstrating outside the barricaded "free speech" area he would be arrested.

40.     PLAINTIFF CUVIELLO told DEFENDANT YU that he would take the citation, the basis of which, according to Officer YU, was for demonstrating outside the free speech zone.  DEFENDANT YU proceeded to write out a citation for PLAINTIFF CUVIELLO, taking approximately 15 minutes to do so.

41.     During this time PLAINTIFF BOLBOL called her attorney, G. Whitney Leigh, who told Ms. BOLBOL he would come down to the Square to talk to the police.

42.     Also during this time PLAINTIFF ALEX FELSINGER arrived and, about ten feet away from where PLAINTIFF CUVIELLO was being cited, held a sign up for the public to view.

43.     Then DEFENDANT YU asked PLAINTIFF CUVIELLO to sign the citation. When Mr. CUVIELLO looked at the citation, he noted that he was not cited for either of the codes the officers previously cited—7.08(b) and 7.15 as explained above—but was now being cited under a new section, 7.08(d).  Section 7.08(d) reads: "Stern Grove, Justin Herman Plaza, Portsmouth Square, Union Square, Mission Dolores Park, Civic Center, and the Music Concourse of Golden Gate Park are frequent sites for the issuance of permits involving large groups of people. In order to prevent interference with the progress and enjoyment of these events, no person may engage in petitioning, leafletting, demonstrating or soliciting in these parks while an event is in progress for which a permit has been issued by the Recreation and Park Department except in those areas described below as public assembly areas. No person shall be considered in violation of the prohibition contained in this subsection until he or she has been informed by a member of the San Francisco Police Department, a member of the

7

1  Park Patrol, or a member of the Recreation and Park Department who displays proper

2  identification of such employment that the event is being conducted pursuant to a valid permit

3  or until the permit pursuant to which the event is being conducted has been shown to such

4  person. The areas in which petitioning, leafletting, demonstrating and soliciting are prohibited

5  during permitted events and the designated public assembly areas during permitted events are

6  described below." "Union Square — The prohibited area is the Western half (Powell Street

7  side) of the Square. The public assembly area is the Eastern half (Stockton Street side) of the

8  Square."

9        44.     Given the language of section 7.08(d), YU and MITRA could not have

10  reasonably believed, or have had probable cause to believe, that any of the Plaintiffs had

11  violated section 7.08(d) by demonstrating outside the barricaded free speech zone in the

12  Southeast corner because section 7.08(d) states plainly that the "free speech" zone or "the

13  public assembly area" embodies the entire "eastern half (Stockton Street side) of the Square."

14  More specifically, Section 7.08(d) does not permit or authorize the imposition of a barricaded

15  "free speech" zone in the Southeast corner or anywhere in the entire Square.

16        45.     Indeed YU told Plaintiffs multiple times, including at the time he cited Mr.

17  CUVIELLO, that they were violating the law because demonstrating outside of the barricaded

18  "free speech" zone in the Southeast corner was a violation of 7.08(d). At the time they were

19  cited, Plaintiffs had not been asked by YU or MITRA to remain in the free speech area

20  actually designated under section 7.08(d) (the entire Eastern half of the Square), but rather in

21  the small barricaded "free speech" box not provided or authorized under the ordinance.

22        46.     After issuing the citation under 7.08(d), the Defendant Officers reiterated to

23  Plaintiffs that they could demonstrate only in the barricaded free speech area in the

24  Southeastern corner of the square. At this point DEFENDANT MITRA pointed out

25  PLAINITTF FELSINGER to DEFENDANT YU, who approached Mr. FELSINGER and told

26  him that the Circus had a permit to perform in the Square and Mr. FELSINGER could

27  demonstrate only in the barricaded free speech area in the Southeastern corner of the square.

28  Mr. FELSINGER expressed his concerns to DEFENDANT YU that the free speech area was

1    inadequate as the audience was facing away from the free speech area, making it difficult to

2    reach the audience with his message and Mr. FELSINGER refused to leave. DEFENDANT

3    YU then proceeded to cite Mr. FELSINGER for violation of Park Code 7.08(d).

4        47.    While Officer YU cited Mr. FELSINGER and Mr. CUVIELLO, both observed

5    that the section YU referred to in his code book had been premarked.

6        48.    During the time DEFENDANT YU was writing up Mr. FELSINGER's

7    citation, Ms. BOLBOL'S attorney G. Whitney Leigh, arrived and proceeded to talk to the

8    officers. Because Ms. BOLBOL did not have identification, DEFENDANT YU told her she

9    would not be cited and released, but instead would be taken into custody and transported to

10   the police station for identification. Based on the threat of custodial arrest Ms. BOLBOL

11   stopped demonstrating and leafleting in the Northwestern corner of the Square.

12       49.    Under threat of arrest if they continued to demonstrate or leaflet outside of the

13   barricaded free speech area, all Plaintiffs, as well as the other demonstrators and leafleters,

14   went to the barricaded "free speech" area in the southeast corner with their banners and signs

15   and attempted to leaflet and disseminate their message to the public in the Square. However,

16   because Plaintiffs were literally confined to a box located behind their intended audience, their

17   message could not be seen by their intended audience and their leafleting attempts were

18   limited to the few people who happened to walk by the barricaded free speech area. The view

19   of Plaintiffs' banners and signs was also obstructed by the barricades delineating the free

20   speech area.

21       50.    While Plaintiffs were confined within the barricaded "free speech" zone, other

22   members of the public moved freely throughout Union Square, including Ringling personnel

23   who were engaging the public in promotion of the Circus event that Plaintiffs sought to

24   protest.

25       51.    Frustrated at having to stand in the free speech box, PLAINTIFF FELSINGER

26   asked DEFENDANT YU to confirm that Plaintiffs and the other demonstrators, were not

27   allowed to go outside the box to leaflet. DEFENDANT YU responded that it was his

28   understanding that the purportedly designated "free-speech area" in the Southeastern corner of

1    the Square, was the only area where people were allowed to demonstrate.

2           52.    DEFENDANT YU and Mr. FELSINGER then looked at the Park Code and

3    discussed the demonstration parameters outlined in the code. Mr. FELSINGER pointed out to

4    DEFENDANT YU that the Park Code stated that the demonstrations were allowed on the

5    entire Eastern side of the square.

6           53.    PLAINTIFFS FELSINGER AND CUVIELLO called Mr. Leigh over who,

7    after looking at the code, agreed that the code permitted demonstrations on the entire Eastern

8    half of the square. Mr. Leigh and PLAINTIFFS FELSINGER AND CUVIELLO then pointed

9    out to DEFENDANT YU that the Park Code did not authorize DEFENDANTS to confine

10   PLAINTIFFS in the barricaded area.  After being confronted with the Park Code,

11   DEFENDANT YU then told Plaintiffs that the Park designated the free speech area.

12   DEFENDANT YU then inexplicably claimed that he never told them they had to be in the

13   barricaded area, even though he had expressly so stated multiple times to PLAINTIFFS and

14   Mr. Leigh.

15          54.    Ms. BOLBOL then asked DEFENDANT YU if Plaintiffs had to stay in the

16   barricaded free speech area and DEFENDANT YU replied "no comment." DEFENDANT YU

17   then told Plaintiffs to just wait for his sergeant to arrive. At that point it became clear to

18   Plaintiffs that DEFENDANTS YU and MITRA not only had restricted Plaintiffs'

19   demonstration beyond what the Park Code prescribed, but had consulted and agreed with the

20   San Francisco Parks Department to this restriction prior to Plaintiffs' arrival in Union Square.

21          55.    Plaintiff DENIZ BOLBOL, justifiably concerned that by the time

22   DEFENDANT YU's sergeant arrived the Circus' promotional event would already have

23   ended, asked her attorney to ask DEFENDANT YU whether the activists could go outside the

24   barricaded area.  DEFENDANT YU responded that they could "as long as it doesn't interfere

25   with the performance."

26          56.    At this point just before the conclusion of the Ringling event, PLAINTIFFS

27   BOLBOL, CUVIELLO AND FELSINGER left the free speech box and set-up their banner

28   behind the stage on the Eastern half of the Square, and the remaining demonstrators held signs

and passed out leaflets on the Eastern side of the Square.

57.     Shortly thereafter San Francisco Police Sergeant Ed Garcia arrived and talked to Plaintiffs and confirmed that the Code did allow them to demonstrate on the Eastern half of the square, not just in the Southeastern corner.

58.     Had DEFENDANTS YU and MITRA told Plaintiffs from the beginning that Plaintiffs could demonstrate anywhere on the Eastern half of the Square, Plaintiffs would have still believed the Park Code to be unconstitutional and would have filed a lawsuit challenging the constitutionality of the Park Code, however, they would have simply demonstrated on the Eastern half of the Square.

59.     After informing Plaintiffs that they would be allowed to demonstrate in the Eastern half of the Square, but were prohibited from engaging in free expression activities in the Western half of the Square, YU, MITRA and the other City Police Officers allowed other members of the public to move freely throughout the Square, including Ringling employees who were engaging in pro-Circus free speech activities without restriction.

60.     Section 7.08(d) of the Park Code, passed by the authority of the San Francisco Board of Supervisors, which permits demonstrations on the entire Eastern half of Union Square, but arbitrarily precludes demonstrations on the Western half of Union Square, is plainly unconstitutional.  There are no signs, lanes, or other markers specifying where the restricted area begins and the unrestricted area begins. Instead, demonstrators are forced to adhere to an imaginary, unspecified "free speech meridian" line running through the middle of the Square – a line through which the rest of the public moved freely and without restriction.

61.     The effect of this "free speech meridian" line is to severely and arbitrarily interfere with demonstrators' ability to effectively convey their message; and in this case, imposition of the "meridian line" did severely limit Plaintiffs' ability to promote their message to the people attending and witnessing the Circus' promotional event, including nearly all of the people who did not travel through the Eastern half of the Square to reach the event. Additionally, the restriction was not narrowly tailored to protect a legitimate interest and there was no independent lawful reason to restrict Plaintiffs from the area.

62.     Section 7.08(d) erects similarly arbitrary and unreasonable restrictions on other public spaces owned and controlled by the City and County of San Francisco, specifically, Stern Grove, Justin Herman Plaza, Ports-mouth Square, Mission Dolores Park, Civic Center, and the Music Concourse of Golden Gate Park. Thus, section 7.08(d) arbitrarily designates "public assembly areas" in each of these public spaces, in which persons engaged in constitutionally protected acts of free expression or assembly can be confined, and "prohibited areas" from which they may be excluded.   Sigmund Stern Recreation Grove, locally called Stern Grove, is a 33-acre recreational site in San Francisco's Sunset District, located along Sloat Boulevard between 19th and 34th Avenues about two miles south of the Golden Gate Park.  Section 7.08(d) designates a "prohibited area" consisting of "the open grassy area of the grove known as the "concert green" which is reserved for performers and the audience." Section 7.08(d) designates all areas outside the concert green, beginning beyond the hedges that delineate the East and West entrances to the concert green as the "public assembly area."

63.     Justin Herman Plaza is a four-acre brick plaza, located at the Eastern terminus of Market Street, adjacent to San Francisco's waterfront.  Section 7.08(d) designates "that portion of the Plaza located at the east end below street level, including the steps lead-ing down to that area," as a "prohibited area" and "the Western portion of the Plaza at street level as the "public area."

64.     Portsmouth Square Portsmouth Square is a one-block park in Chinatown, San Francisco, California, that is bounded by Kearny Street on the east, Washington Street on the north, Clay Street on the south, and Walter Lum Place on the west.  Section 7.08 designates the area "within 50 feet of the elevator" as a "prohibited area."  And any portion of the Square beyond a 50-foot radius of the elevator as a "public assembly area."

65.     Mission Dolores is a San Francisco city park bounded by 18th Street on the north, 20th Street to the south, Dolores Street to the east and Church Street to the west. Section 7.08(d) designates "the central portion of the Park extending to any point 50 or more feet from the perimeter of the Park" as a "prohibited area."  Section 7.08(d) designates "the perimeter of the Park extending from the edges of the Park 50 feet inward" as "the public

1    assembly area."

2        66.    San Francisco's Civic Center comprises two plazas (Civic Center Plaza and

3    United Nations Plaza) bounded by Market Street on the south, Franklin Street on the west,

4    Turk Street on the north, and Leavenworth and Seventh streets on the east.  Section 7.08(d)

5    designates "the central portion of the park which includes the fountain and paved areas

6    surrounding the fountain and extends to the lawned areas to the north (McAllister Street) and

7    south (Grove Street)" as a "prohibited area."  Section 7.08(a) designates the "public assembly

8    area" to "include" "the lawned por-tions at the northern and southern ends of the park and the

9    sidewalks internal to the northern and southern lawned areas and (1) the southern portion of

10   the park, the Grove Street exterior sidewalk and the Larkin Street exterior side- walk

11   immediately east of the lawned areas and the Polk Street exterior sidewalk immediately West

12   of the lawned area and, (2) as to the northern portion of the park, the McAllister Street

13   exterior sidewalk and

14   the Larkin Street exterior sidewalk immediately east of the lawned areas and the Polk Street

15   exterior sidewalk immediately West of the lawned area."

16       67.    The Music Concourse of Golden Gate Park Music Concourse is an open-air

17   plaza located in San Francisco's Golden Gate Park between the California Academy of

18   Sciences and the de Young Museum.  Section 7.08(d) designates the are "the stage area,

19   within 100 feet of the stage, and the central depressed portion below street level, including the

20   stepsleading down to the depressed portion" as a "prohibited area."  Section7.08(d) designates

21   "any area of the Music Concourse at street level except for any area within 100 feet of the

22   stage" as a "public assembly area"

23       68.    Each of the provision's designations of "prohibited" and "public" or "public

24   assembly" areas is arbitrary, vague, uncertain, and not narrowly tailored to serve any

25   legitimate government purpose. In fact, as the events described above demonstrate, the

26   restrictions contained in section 7.08(d) pertaining to Union Square and the other areas

27   addressed in the provision are largely unknown to San Francisco Park Police or other law

28   enforcement.  And because the statute is rarely, if ever, enforced, it is entirely unknown to the

13

1   public.

2       69.     Indeed, Plaintiffs are informed and believe that San Francisco has not enforced

3   section 7.08(d) for years, if at all.

4       70.     Here section 7.08(d) served only as a means to authorize the selective

5   restriction of constitutionally protected activities when the "permit holder," in this case

6   Ringling Bros., sought to prohibit free speech.

7       71.     In fact, Plaintiffs are informed and believe that Ringling routinely

8   communicates and confers with municipalities about their desires and expectations at events it

9   holds on public property, specifically including how to handle anticipated animal rights'

10  demonstrators and restrict free speech activity.

11      72.     For instance at Ringling circus events in the Bay area on public property,

12  including the Oracle Arena in Oakland, the Stockton Arena in Stockton and at the HP Pavilion

13  in San Jose, Ringling plays a major role in managing and directing security and police officers

14  at its events by:

15          a.  meeting with public entities to establish specific security protocols

16              regarding  animal rights demonstrators;

17          b.  directing security to prohibit animal rights' demonstrators from accessing

18              certain areas normally open to the public;

19          c.  paying the wages of security and police officers working the event;

20          d.  instituting unlawful bans on videotaping in public forums where the circus

21              holds events; and

22          e.  instigating the unlawful arrests of animal rights' demonstrators.

23      73.     DEFENDANTS YU and MITRA interfered with and subverted Plaintiffs'

24  efforts to exercise their constitutionally protected free speech; first, by attempting to confine

25  PLAINTIFFS in a barricaded "free speech" box in the Southeastern corner of the Square, and

26  second by precluding PLAINTIFFS from entering the Western portion of the Square (even as

27  the public moved freely through the same area and while Ringling used that area for their own

28  expressive activities), solely because PLAINTIFFS were demonstrating and leafleting.

Essentially, PLAINTIFFS were excluded from areas plainly open to the public, merely because they were holding signs or handing out informational material.

74. Additionally, DEFENDANT CITY and COUNTY OF SAN FRANCISCO, through its Park Code policy and its application, unlawfully interfered with and subverted Plaintiffs' efforts to exercise their constitutionally protected free speech rights by ultimately restricting them to the Eastern half of the Square, impacting and limiting their ability to effectively reach a significant number of people who attended the Ringling promotional event.

75. Section 7.08(d) of the San Francisco Park Code is unconstitutional on its face, because it imposes restrictions on free assembly and free speech that are arbitrary, vague, uncertain and not narrowly tailored to serve any legitimate government purpose; and also given the authority that the statute provides to the permit holder to suppress free speech whenever it does not comport with the permit-holder's interests, it is not content-neutral. And as applied to PLAINTIFFS during the events described above, section 7.08(d) is unconstitutional, because it was used for the purpose of interfering with and preventing PLAINTIFFS' exercise of constitutionally-protected rights of free expression.

76. Each of the other "public assembly areas designated for other public fora areas in San Francisco under section 7.08(d) suffer from the same flaws, and are equally unconstitutional.

77. San Francisco Park Code Section 7.15 is also unconstitutional on its face because it imposes restrictions on free assembly and free speech that are arbitrary, vague, uncertain and not narrowly tailored to serve any legitimate government purpose. Section 7.15 authorizes holders of permits issued by the City to exclude members of the public, including persons engaged in constitutionally protected activities, from public fora, including Union Square and other public spaces, regardless of whether the activities are compatible with the public fora.

78. San Francisco Park Code Section 7.15 is also unconstitionally vague and overbroad, as it imposes criminal sanction on anyone deemed to "disturb or interfere" with a person occupying a space pursuant to a permit.

79.     San Francisco Park code Section 7.15 is also unconstitutional because it enables non-government agents, e.g. a permittee, to establish, regulate and enforce free speech rights at events on public property, which may be open to the general public, by providing that "any person possessing a valid permit" has the authority to enforce the following section of the code: "It shall be unlawful for any person to refuse to leave an area or facility which has been reserved by a valid permit when asked to do so by the person or party displaying such permit."

80.     And as applied to PLAINTIFFS during the events described above, section 7.15 is unconstitutional because it was used as basis to interfere with and prevent PLAINTIFFS' from exercising their constitutionally-protected rights of free expression.

81.     All DEFENDANTS herein planned, authorized, directed, ratified, and/or personally participated in the following conduct, which includes but is not limited to:

     a.     Retaliating against Plaintiffs for their exercise of their First Amendment rights;

     b.     Employing a "cafeteria" approach to the Park Code, wherein YU and MITRA threatened, detained, or cited Plaintiffs under a succession of different Park Code provisions, none of which lawfully could be imposed against Plaintiffs;

     c.     Arresting Plaintiffs for engaging in constitutionally protected activity on public property, including holding banners and signs and leafleting patrons;

     c.     Refusing to allow Plaintiffs access to the public area known as Union Square for the purpose of exercising their United States and California constitutional rights;

     d.     Singling out Plaintiffs because of their viewpoints and the perceived content of their expression; and

     e.     Using threats, intimidation and coercion to violate   Plaintiffs' rights.

82.     At all material times, Plaintiffs were peacefully exercising their Constitutionally protected First Amendment rights to free speech, press, association,

1   conscience, and beliefs, by disseminating information on matters of great public concern in a

2   public forum.

3        83.    At all material times, Plaintiffs herein acted lawfully, never threatened any

4   person, and never resisted any lawful order by any police officer.

5        84.    Plaintiffs' speech, association, conscience and beliefs were on matters of great

6   public concern.

7        85.    Defendants' speech-related conduct, practices, policies and customs, and

8   Defendants' arrests of Plaintiffs and threats to arrest Plaintiffs had a chilling effect on

9   Plaintiffs', free speech, expression, and associations, and further constituted content-based

10   regulation of Plaintiffs' speech, and prior restraints on protected expression and associations.

11        86.    Defendants' speech-related conduct, practices, policies and customs are

12   overbroad, and are not narrowly tailored to accomplish any rational, legitimate, important,

13   substantial, significant or compelling interest of Defendants.

14        87.    Defendants' conduct was objectively unreasonable under the circumstances.

15        88.    All Defendants, their employees, and agents, engaged in a concerted action to

16   deny Plaintiffs their rights to freedom of speech, press, association, conscience and beliefs

17   through threats, intimidation and coercion without Plaintiffs' consent and in furtherance of a

18   common scheme to violate these Plaintiffs' aforementioned rights, with knowledge of the

19   conspiracy and its unlawful purpose.

20        89.    Defendants' conduct described herein was intended, and was reasonably likely,

21   to deter and/or chill Plaintiffs' exercise of constitutionally protected rights, and/or was in

22   retaliation for Plaintiffs' political views and their exercise of constitutionally protected rights.

23        90.    Defendants' conduct described herein had a chilling effect on Plaintiffs'

24   exercise of their First Amendment rights.

25        91.    At all material times, Defendants' restrictions on Plaintiffs' protected First

26   Amendment activity was unreasonable as to time, place, and manner.

27        92.    Plaintiffs' exercise of their First Amendment rights to freedom of speech,

28   press, assembly, association, conscience, and beliefs, and the content and/or viewpoint of

Plaintiffs' protected expression, or perceived expression, was a substantial or motivating factor for Defendants' conduct described herein.

93.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to each Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

94.     As a direct and proximate result of each Defendant's conduct as set forth above, each Plaintiff sustained the following further injuries and damages, past and future, among others:

    a.     Mental suffering and emotional distress;

    b.     Interference with and irreparable damage to their constitutional rights;

    c.     All damages and penalties recoverable under 42 USC §1983 and federal civil rights law;

    d.     Suppression of speech and interference with beliefs and associations.

95.     With regard to all the causes of action that follow against DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, DEFENDANT N. YU and DEFENDANT J. MITRA and DOES 1-20, Plaintiffs allege upon belief that DEFENDANT CITY and COUNTY OF SAN FRANCISCO developed and maintained a policy of exhibiting deliberate indifference to the constitutional rights of persons in Union Square, which caused the violation of Plaintiffs' rights.

96.     It was the policy and/or custom of DEFENDANT CITY and COUNTY OF SAN FRANCISCO to prophylactically treat the Western half of Union Square as a non-public forum, if there was a permitted event taking place in Union Square, and pursuant to this policy to arrest Plaintiffs, threaten to arrest Plaintiffs and deny Plaintiffs their constitutional rights in the Western half of Union Square.

97.     It was the policy and/or custom of DEFENDANT SAN FRANCISCO RECREATION & PARK DEPARTMENT to restrict Plaintiffs to a free speech area in the

Southeastern corner of Union Square, and pursuant to this policy to arrest Plaintiffs, threaten

to arrest Plaintiffs and deny Plaintiffs their constitutional rights in the Eastern and Western

half of Union Square.

98.     The above described policy demonstrates a deliberate indifference on the part

of policy makers of DEFENDANT CITY and COUNTY OF SAN FRANCISCO and

DEFENDANT SAN FRANCISCO RECREATION & PARK DEPARTMENT to protect the

constitutional rights of people demonstrating in Union Square and said policies and customs

were the cause of the violations of Plaintiffs' rights alleged herein.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**– 42 USC § 1983 –**
**Violation of the following rights under the United States Constitution:**
**First Amendment Right to Free Exercise of Speech and Press;**
**Fourth Amendment Right Against Unlawful Seizure,**
**False Arrest and Excessive Force; and Fourteenth Amendment**
**Right to Equal Protection of the Laws**
***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

99.     Plaintiffs reallege each and every paragraph in this complaint as if fully set

forth here.

100.     DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, N. YU and J.

MITRA, and DOES 1-20, acted under color of law when they threatened to arrest Plaintiffs

and arrested PLAINTIFFS CUVIELLO and FELSINGER, for demonstrating on public

property, in a public forum, without warrant, probable cause or other legal right, thereby

depriving Plaintiffs of the clearly-established and well-settled constitutional rights protected

by the First, Fourth, and Fourteenth Amendment to U.S. Constitution, specifically:

    a.    The right to be free from unreasonable searches and seizures as

    secured by the Fourth Amendment;

    b.    The right to be free from wrongful arrest, detention, and imprisonment

    as

    secured by the Fourth Amendment;

c.    The right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to speech, association, conscience, and beliefs, as secured by the First and Fourteenth Amendments;

d.    The right to be free from the deprivation of equal protection of the law as secured by the Fourteenth Amendment; and

e.    The right to be free from malicious prosecution as secured by the First, Fourth and Fourteenth Amendments.

101.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth above.

102.    The conduct of DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, entitles Plaintiffs to damages, punitive damages, attorneys' fees, costs, injunctive relief, and penalties allowable under 42 USC §§ 1983.

**SECOND CAUSE OF ACTION**
**---42 U.S.C. § 1983---**
**---42 U.S.C. § 1985---**
**Conspiracy to Violate And Violation Of**
**The First, Fourth, And Fourteenth Amendments of The United States Constitution**
**And Article 1 Section 2(a) Of The California Constitution**
***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

103.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

104.    DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, acted under color of law when they threatened with arrest, and arrested, Plaintiffs for holding a banner on public property, in a public forum, depriving Plaintiffs of their rights under the United States and California Constitution, and are therefore liable to Plaintiffs under 42 USC §§ 1983 and 1985.

105.    DEFENDANTS SAN FRANCISCO RECREATION & PARK

20

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, acted under color of law when they conspired to adopt the free speech area restriction beyond what the Park Code prescribed and confining Plaintiffs within a barricaded area at the Southeastern corner of Union Square, and acted to threaten and arrest Plaintiffs, which led to Plaintiffs' being denied access to public property, to hold banners, signs and distribute leaflets in a public forum, and in a designated public forum, thereby depriving Plaintiffs of their rights under the United States and California Constitution, and are therefore liable to Plaintiffs under 42 U.S.C. §§ 1983 and 1985.

106. DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, aided, abetted, encouraged, facilitated and participated in assisting one another in setting forth and executing the restrictions on Plaintiffs first from leaving the barricaded area, and later from accessing the Western half of Union Square.

107. DEFENDANTS SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA aided, abetted, encouraged, facilitated and participated in assisting one another in setting forth and executing the restriction of Plaintiffs to the free speech area at issue in this litigation and to act to threaten and arrest Plaintiffs, which resulted in Plaintiffs' wrongful arrests and deprivation of their Federal and State Constitutional Rights.

108. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth above.

109. The conduct of DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, entitles Plaintiffs to damages, punitive damages, attorneys' fees, costs, injunctive relief, and penalties allowable under 42 USC §§ 1983 and 1985.

//

//

**THIRD CAUSE OF ACTION**
**Violation of Article 1, Section 2(a) of the California Constitution**
**Liberty Of Speech**
***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

110.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth herein.

111.    DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES 1-20, acted under color of law when they threatened to arrest and arrested Plaintiffs for demonstrating on public property, in a public forum, without warrant, probable cause or other legal right, thereby depriving Plaintiffs of the clearly-established and well-settled constitutional rights protected by Article 1, Section 2(a) of the California Constitution.

112.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth above.

**FOURTH  CAUSE OF ACTION**
**Facial And As Applied Challenge To San Francisco Park Code Section 7.08(d)**
***(ALL PLAINTIFFS AGAINST DEFENDANT CITY AND COUNTY OF SAN FRANCISCO)***

113.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth herein.

114.    San Francisco Park Code Section 7.08(d) reads: "Stern Grove, Justin Herman Plaza, Portsmouth Square, Union Square, Mission Dolores Park, Civic Center, and the Music Concourse of Golden Gate Park are frequent sites for the issuance of permits involving large groups of people. In order to prevent interference with the progress and enjoyment of these events, no person may engage in petitioning, leafletting, demonstrating or soliciting in these parks while an event is in progress for which a permit has been issued by the Recreation and Park Department except in those areas described below as public assembly areas. No person shall be considered in violation of the prohibition contained in this subsection until he or she has been informed by a member of the San Francisco Police Department, a member of the Park Patrol, or a member of the Recreation and Park Department who displays proper

identification of such employment that the event is being conducted pursuant to a valid permit or until the permit pursuant to which the event is being conducted has been shown to such person. The areas in which petitioning, leafletting, demonstrating and soliciting are prohibited during permitted events and the designated public assembly areas during permitted events are described below." "Union Square — The prohibited area is the Western half (Powell Street side) of the Square. The public assembly area is the Eastern half (Stockton Street side) of the Square."

115.    Facially, San Francisco Park Code Section 7.08(d) is unconstitutional as it unnecessarily restricts free speech activities in violation of the constitutional time, place and manner standards that allow restrictions on protected free speech.

116.    As applied San Francisco Park Code Section 7.08(d) unnecessarily restricted Plaintiffs' free speech activities in violation of the constitutional time, place and manner standards that allow restrictions on protected free speech.

117.    As a result of this unconstitutionally statute PLAINTIFFS BOLBOL, CUVIELLO and FELSINGER were denied effective exercise of their constitutional free speech rights.

118.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth above.

**FIFTH CAUSE OF ACTION**
**Facial And As Applied Challenge To San Francisco Park Code Section 7.15.**
*(ALL PLAINTIFFS AGAINST DEFENDANT CITY AND COUNTY OF SAN FRANCISCO)*

119.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

120.    San Francisco Park Code Section 7.15 reads: ""Any person possessing a valid permit, which states that an area has been reserved for such person's use, has the exclusive right to use the area or facility specified in the permit for the time specified. It shall be unlawful for any person to refuse to leave an area or facility which has been reserved by a

1   valid permit when asked to do so by the person or party displaying such permit, by a

2   Recreation and Park Department employee, by a police officer, or by a member of the Park

3   Patrol, and no person shall in any manner disturb or interfere with any person or party

4   occupying the area under such a permit, nor with the belongings of such person or party."

5       121.    Facially, San Francisco Park Code Section 7.15 is unconstitutional as it

6   unnecessarily restricts free speech activities in violation of the constitutional time, place and

7   manner standards that allow restrictions on protected free speech.

8       122.    Section 7.15 is also unconstitutionally vague and overbroad, as it authorizes the

9   imposition of criminal sanctions against persons who are deemed to have "disturbed" or

10  "interfered" with the use of publicly-owned spaces by persons holding permits, regardless of

11  whether the purported disturbance or interference involved constitutionally protected

12  activities.

13      123.    As applied San Francisco Park Code Section 7.15 unnecessarily restricted

14  Plaintiffs' free speech activities in violation of the constitutional time, place and manner

15  standards that allow restrictions on protected free speech.

16      124.    As a result of this unconstitutionally statute PLAINTIFFS BOLBOL,

17  CUVIELLO and FELSINGER were denied effective exercise of their constitutional free

18  speech rights.

19      125.    As a direct and proximate result of Defendants' acts and/or omissions as set

20  forth above, Plaintiff sustained injuries and damages as set forth above.

21                              **SIXTH CAUSE OF ACTION**
                        **Violation Of California Civil Code Section 52.1**
22                      ***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS )***

23      126.    Plaintiffs reallege each and every paragraph in this complaint as if fully set

24  forth herein.

25      127.    DEFENDANTS CITY and COUNTY OF SAN FRANCISCO, SAN

26  FRANCISCO RECREATION & PARK DEPARTMENT, N. YU and J. MITRA, and DOES

27  1-20, omissions, customs, and policies, as described above, violated Plaintiff's rights under

28

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

California Civil Code §52.1, by interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California, including but not limited to 42 U.S.C. § 1983 and the following clearly-established rights under the United States Constitution and the California Constitution:

> The right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to speech, press, association, conscience, and beliefs, as secured by the First and Fourteenth Amendments;

> The right to be free from the deprivation of equal protection of the law as secured by the Fourteenth Amendment;

> The right to be free from illegal arrest as secured by the Fourth Amendment;

> The right to freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press, as secured by the California Constitution, Article I, Section 2(a);

> The right to be free from deprivation of equal protection of the laws as secured by the California Constitution, Article I, Section 7(a); and

> The right to be free from illegal arrest as secured by the California Constitution, Article I, Section 13.

128.    As a direct and proximate result of DEFENDANTS' violation of California Civil Code §52.1, Plaintiffs sustained injuries and damages as set forth above. Further, Plaintiffs claim all damages and penalties allowed by law, including California Civil Code §§52 and 52.1, and including costs, treble damages, and civil penalties.

**SEVENTH CAUSE OF ACTION**
**ILLEGAL EXPENDITURE OF FUNDS**
**CALIFORNIA CODE OF CIVIL PROCEDURE § 526a**
**Injunctive Relief**
(*FELSINGER AGAINST ALL DEFENDANTS*)

129.    PLAINTIFF FELSINGER realleges each and every paragraph in this complaint as if fully set forth herein.

130.    PLAINTIFF FELSINGER was a resident and taxpayer of San Francisco at

the time of the events underlying this action, and was a resident and taxpayer of San Francisco within one year of the date of this Complaint. On information and belief, the City expended funds paying YU and MITRA, in addition to other City employees, to unlawfully impose sections 7.15 and 7.08 against FELSINGER and the other Plaintiffs.

131.     The expenditure of public funds to enforce San Francisco Park Code section 7.08(d) and 7.15 as alleged herein have resulted in, and unless restrained will continue to result in, the illegal expenditure, waste of, injury to the tax paying residents of the state of California. An injunction against all DEFENDANTS is therefore warranted to restrain the illegal expenditure, waste of, or injury to the tax paying residents of the state of California and San Francisco.

132.     Enforcement of sections 7.08(d) and 7.15 have caused and will continue to cause immediate injury to the State, the City of San Francisco and its residents unless restrained by this Court, and PLAINTIFF FELSINGER has no adequate remedy at law.

133.     PLAINTIFF FELSINGER is further entitled to recover from DEFENDANTS his reasonable costs and attorney fees incurred in bringing this action pursuant to California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

a.     A court order for declaratory and injunctive relief declaring San Francisco Park Code Section 7.08(d) violates the Constitution of the United States and Constitution of the State of California and prohibiting such restrictions in future years.

b.     Compensatory, general, and special damages against all defendants in an amount according to proof which is just and fair.

c.     Exemplary damages against each individual defendant, excluding DEFENDANTS CITY and COUNTY OF SAN FRANCISCO and SAN FRANCISCO RECREATION & PARK DEPARTMENT, in an amount

1    sufficient to deter and to make an example of those defendants.

2    d.    The cost of this suit and such other relief as the court finds just and proper.

3    e.    A civil penalty of $25,000 for each violation of rights under California

4    Civil Code Section 52.1(b).

5    f.    All other damages, penalties, costs, and interest as allowed by 42 USC §§

6    1983, 1988, Cal. Civil Code §§ 52, 52.1, and as otherwise allowed by law.

7

8    Dated:  September 28, 2012                Respectfully submitted,

9                                             LAW OFFICES OF TRENT J. THORNLEY

10

11                                            By:  _/s/ Trent J. Thornley_____
12                                                Trent J. Thornley
                                                  Attorneys for Plaintiff
13                                                DENIZ BOLBOL

14    Dated:  September 28, 2012
15                                            By:  _/s/ Matt Springman_____
                                                  Matt Springman
16                                                Attorneys for Plaintiff
                                                  DENIZ BOLBOL
17
18    Dated:  September 28, 2012              GONZALEZ & LEIGH LLP

19
20                                            By:  _/s/ G. Whitney Leigh_____
                                                  G. Whitney Leigh
21                                                Attorneys for Plaintiff
                                                  ALEX FELSINGER
22
23    Dated:  September 28, 2012
24                                            By: _/s/ Joseph P. Cuviello_____
                                                  JOSEPH P. CUVIELLO
25                                                Plaintiff In Pro Se

26

27

28

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury on the claims raised herein.

3

4

Dated:  September 28, 2012                    Respectfully submitted,

5

LAW OFFICES OF TRENT J. THORNLEY

6

7

By:  _/s/ Trent J. Thornley_____

8
Trent J. Thornley
Attorneys for Plaintiff
9
DENIZ BOLBOL

10

11

Dated:  September 28, 2012

12

13

By:  _/s/ Matt Springman_____

14
Matt Springman
Attorneys for Plaintiff
15
DENIZ BOLBOL

16

Dated:  September 28, 2012                    GONZALEZ & LEIGH LLP

17

18

By:  _/s/ G. Whitney Leigh_____

19
G. Whitney Leigh
Attorneys for Plaintiff
20
ALEX FELSINGER

21

22

23

Dated:  September 28, 2012

24

By: _/s/ Joseph P. Cuviello_____

25
JOSEPH P. CUVIELLO
Plaintiff In Pro Se
26

27

28

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**